308 Ga. 141
FINAL COPY

S19A1404.  JOHNSON v. THE STATE.

BLACKWELL, Justice.

Frederick Johnson, Jr., is charged with murder and unlawful possession of a firearm by a felony first-offender probationer, both in connection with the fatal shooting of Tyrell Jordan in June 2016.[1] Johnson contends that he shot Jordan only to protect himself and that the shooting was a justified use of force in defense of self under OCGA § 16-3-21 (a). But because Johnson was a felony first-offender probationer generally forbidden to possess a firearm, the State asserts that he is categorically barred by OCGA § 16-3-21 (b) (2) from claiming that the shooting was a justified use of force in defense of self. The State filed a motion in limine to bar Johnson from asserting his theory of justification at trial, and pursuant to OCGA § 16-3-

---

[1] In August 2018, a Bibb County grand jury indicted Johnson, charging him with murder with malice aforethought, murder in the commission of a felony (aggravated assault and possession of a firearm by a felony first-offender probationer), and possession of a firearm by a felony first-offender probationer.

24.2, Johnson filed a motion for pretrial immunity from prosecution for murder based on the same theory. Following an evidentiary hearing, the trial court granted the motion in limine and denied the motion for immunity, concluding as a matter of law that Johnson cannot claim that the shooting was a justified use of force in defense of self.[2] Johnson appeals,[3] and we reverse and remand for further proceedings consistent with this opinion.

"A person is justified in threatening or using force against another when and to the extent that he . . . reasonably believes that

---

[2] No one disputes that Johnson was a felony first-offender probationer in June 2016. And for the purposes of this appeal, we accept that Johnson presented evidence at the hearing on his motion for immunity from which the trial court *could* find facts sufficient to establish that Johnson shot Jordan under a "[reasonable belief] that such force [was] necessary to prevent death or great bodily injury to himself." OCGA § 16-3-21 (a). We do not mean to suggest, of course, that the trial court *should* make such findings. Whether such findings are warranted depends on assessments of credibility and the weight to be afforded to the evidence, assessments that are committed to the discretion of the trier of fact. To this point, the trial court has made no such assessments, having concluded that Johnson is barred as a matter of law from even claiming that the shooting was a justified use of force in defense of self because he was a felony first-offender probationer.

[3] At the urging of both Johnson and the State, the trial court certified its ruling for immediate review. Johnson timely filed an application for leave to file an interlocutory appeal, this Court granted the application, and this appeal followed. See OCGA § 5-6-34 (b).

2

such threat or force is necessary to defend himself . . . against such other's imminent use of unlawful force[.]" OCGA § 16-3-21 (a). The use of deadly force, however, is justified only by a reasonable belief that "such force is necessary to prevent death or great bodily injury." Id. And no person may claim that a use of force was justified in defense of self if he "[i]s attempting to commit, committing, or fleeing after the commission or attempted commission of a felony[.]" OCGA § 16-3-21 (b) (2). Convicted felons and felony first-offender probationers are generally forbidden to possess firearms, and if a convicted felon or felony first-offender probationer unlawfully possesses a firearm, he commits a felony. See OCGA § 16-11-131 (b). It follows that the *unlawful* possession of a firearm by a convicted felon or felony first-offender probationer will preclude the felon or probationer from claiming that his use of the firearm in defense of self was justified under OCGA § 16-3-21 (a).

Consistent with the plain meaning of OCGA § 16-3-21 (b) (2), we held in Woodard v. State, 296 Ga. 803, 814 (3) (b) (771 SE2d 362) (2015), that the felonious possession of a firearm by a convicted felon

3

or felony first-offender probationer will preclude the felon or probationer from asserting that his use of the firearm in defense of self was justified.[4] See also Moore v. State, 306 Ga. 532, 535 (2) (d) (832 SE2d 384) (2019). But even under Woodard, if conduct that otherwise would be a felony is itself justified, it is no crime at all, and it does not trigger the preclusive bar of OCGA § 16-3-21 (b) (2). See Starks v. State, 304 Ga. 308, 312 (2) (818 SE2d 507) (2018)

---

[4] The Court has not always subscribed to this understanding of OCGA § 16-3-21 (b) (2). In Head v. State, 253 Ga. 429 (322 SE2d 228) (1984), three members of the Court suggested in a special concurrence — without any discussion of the relevant statutory text — that OCGA § 16-3-21 (b) (2) should not be understood to preclude a convicted felon from raising a justification defense under OCGA § 16-3-21 (a) simply because the felon was unlawfully in possession of a firearm:

> [A] person who defends himself or herself against an aggressor's attack and who, without malice or intent, causes the aggressor's death in self-defense, should not nevertheless be guilty of felony murder on the basis that such person is guilty of possession (however momentary) of a firearm by a convicted felon. That is to say, in my view, a person should not be denied the right of self-defense because such person is a convicted felon.

253 Ga. at 433 (Hill, C. J., concurring), joined by Clarke and Smith, JJ. Seven years later, a majority of the Court fully endorsed that approach, holding in Heard v. State, 261 Ga. 262, 263 (3) (403 SE2d 438) (1991), that the preclusive bar of OCGA § 16-3-21 (b) (2) should be applied only "where it makes sense [to a majority of this Court] to do so." Applying this "where it makes sense to do so" test in Heard, we said that "[i]t is both unfair and illogical to deny a defendant the defense of justification against a felony murder charge merely because of his status as a convicted felon in possession of a firearm." Id. at 263 (3) n.3. But in Woodard, this Court overruled Heard. See 296 Ga. at 814 (3) (b).

4

("OCGA § 16-3-21 (b) (2) applies to all felonies and, although it does not completely eliminate the possibility of a justification defense to felony murder, such a defense requires the jury to find that the underlying felony was justified."). See also <u>Woodard</u>, 296 Ga. at 814 (3) (b) n.10. The question presented in a case like this one, therefore, is not whether a convicted felon or felony first-offender probationer may claim that his use of a firearm was a justified use of force in defense of self when, at the time of its use, the felon or probationer was in unlawful possession of the firearm. <u>Woodard</u> makes clear that such a claim of justification is squarely precluded by OCGA § 16-3-21 (b) (2). Rather, the pertinent question is whether the possession of the firearm actually was unlawful — or instead was justified — at the moment of its use.

As for the circumstances that may justify the possession of a firearm by a convicted felon or felony first-offender probationer, Johnson points to the Safe Carry Protection Act of 2014, Ga. L. 2014,

p. 599, of which OCGA § 16-11-138 is a part.[5] Code Section 16-11-138 provides that "[d]efense of self or others, as contemplated by and provided for under [OCGA § 16-3-21], shall be an absolute defense to any violation under this part." "This part" — referring to Title 16, Chapter 11, Article 4, Part 3 of the Code — is comprised of numerous statutes prohibiting the unlawful possession and carrying of certain firearms in certain places and by certain persons, including OCGA § 16-11-131, which forbids convicted felons and felony first-offender probationers to possess firearms.[6] Under OCGA § 16-11-138,

---

[5] Prior to the enactment of the Safe Carry Protection Act, and in the absence of any statute specifically providing a justification defense for crimes involving the unlawful possession or carrying of firearms, this Court adopted a "sudden emergency" standard to identify the circumstances in which such possession or carrying would be lawful. See Cauley v. State, 260 Ga. 324, 325 (393 SE2d 246) (1990). Because the Safe Carry Protection Act applies in this case, and because we conclude that it is sufficient to resolve this appeal, we have no occasion to consider today the continuing viability (if any) of the "sudden emergency" standard. We note that Woodard did not address the "sudden emergency" standard or the Safe Carry Protection Act.

[6] Title 16, Chapter 11, Article 4, Part 3 now also includes statutes that prohibit the unlawful carrying of a handgun without a valid license to carry, OCGA § 16-11-126 (h); the unlawful carrying of a firearm in government buildings, courthouses, jails, prisons, places of worship, state mental health facilities, and polling places, OCGA § 16-11-127 (b); the unlawful possession of a firearm in and around schools, OCGA § 16-11-127.1 (b) (1); the unlawful possession of a firearm on the premises of a nuclear power facility, OCGA § 16-

Johnson says, circumstances sufficient to justify a threat or use of force in defense of self that would otherwise be unlawful also may be sufficient to justify the possession or carrying of a firearm that otherwise would violate Title 16, Chapter 11, Article 4, Part 3, including OCGA § 16-11-131.

As we have explained before, "[w]hen we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." Deal v. Coleman, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted). "To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language

---

11-127.2 (a); the unlawful possession of a firearm in restricted access areas of commercial service airports, OCGA § 16-11-130.2 (a); the unlawful possession of a handgun by a person under the age of 18 years, OCGA § 16-11-132 (b); and the unlawful carrying of a handgun by a person with a valid license to carry but without proof of the license in his immediate possession, OCGA § 16-11-137 (a). In addition to these statutes that restrict the possession and carrying of firearms, Title 16, Chapter 11, Article 4, Part 3 also includes provisions that forbid the alteration or counterfeiting of a weapons carry license, OCGA § 16-11-129 (g), and the discharge of firearms by persons under the influence of alcohol or drugs, OCGA § 16-11-134.

would." Id. at 172-173 (1) (a) (citations and punctuation omitted). "The common and customary usages of the words are important, but so is their context." Zaldivar v. Prickett, 297 Ga. 589, 591 (1) (774 SE2d 688) (2015) (citation and punctuation omitted). "For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." May v. State, 295 Ga. 388, 391-392 (761 SE2d 38) (2014) (citations omitted).

Read in its statutory context, the most natural and reasonable understanding of OCGA § 16-11-138 is the one that Johnson proposes. By its plain terms, OCGA § 16-11-138 affords "an absolute defense" to "any violation" of Title 16, Chapter 11, Article 4, Part 3. That "absolute defense" requires a showing of "[d]efense of self or others, as contemplated by and provided for under [OCGA § 16-3-21]." By its own terms, OCGA § 16-3-21 provides a justification defense, but only for crimes that involve "threatening or using force." It offers no defense at all for crimes that merely consist of possessing

or carrying a firearm. See <u>Wells v. State</u>, 200 Ga. App. 104, 107 (407 SE2d 86) (1991) (Andrews, J., concurring). Accordingly, if OCGA § 16-11-138 were understood to apply only when OCGA § 16-3-21 applies by its own terms, it would be entirely unnecessary (because OCGA § 16-3-21 would already afford a defense of justification), and it would also appear almost entirely useless (because nearly all of the prohibitions in Title 16, Chapter 11, Article 4, Part 3 concern the possession or carrying of weapons, not the use of such weapons). The only sensible understanding of OCGA § 16-11-138 is that it effectively amends OCGA § 16-3-21 (a) so as to potentially justify not only threats or uses of force in the circumstances described in OCGA § 16-3-21 (a), but also the possession or carrying of a weapon in violation of Title 16, Chapter 11, Article 4, Part 3.

As we understand it, OCGA §§ 16-3-21 (a) and 16-11-138 in combination effectively provide this rule of law:

> A person is justified in threatening or using force against another, *or in engaging in conduct that is otherwise prohibited under Title 16, Chapter 11, Article 4, Part 3 of the Code,* when and to the extent that he or she reasonably believes that such threat or force *or conduct*

*otherwise prohibited under Title 16, Chapter 11, Article 4, Part 3* is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force . . . .[7]

Here, if Johnson's possession of a firearm at the time of the shooting was justified under the rule of law produced by the combination of OCGA §§ 16-3-21 and 16-11-138, then it cannot be said that Johnson was "committing . . . a felony" when he shot Jordan, and the preclusive bar of OCGA § 16-3-21 (b) (2) would not apply. Accordingly, the trial court erred when it denied the motion for immunity and granted the motion in limine upon the rationale that

---

[7] Understood in this way, OCGA § 16-11-138 affords a justification defense for the otherwise unlawful possession or carrying of a firearm only "when and to the extent" that the accused reasonably believes that such possession or carrying is necessary to defend himself. As such, when applied to, for instance, the possession of a firearm by a convicted felon or felony first-offender probationer, it would justify the possession only for the duration of the necessity. If a felon or probationer came into possession of a firearm prior to any necessity arising and continued to have possession after any necessity had dissipated, his possession both before and after the time of necessity would be felonious and prosecutable. The justification of possession "when and to the extent" he reasonably believed it necessary, however, would mean that the possession during the time of necessity would not be felonious, and if the firearm were used during the time of necessity, its possession would not trigger the preclusive bar of OCGA § 16-3-21 (b) (2) against a claim that the use of force itself was justified. In those circumstances, it could not be said that the accused was "committing" the felony of unlawful possession of a firearm by a convicted felon at the time of the use of force that he seeks to justify.

10

it employed.[8] The judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.[9]

Judgment reversed and case remanded. All the Justices concur.

---

[8] With respect to the motion for immunity under OCGA § 16-3-24.2, we observe that pretrial immunity formerly was not available to persons who used a weapon that they carried or possessed in violation of Title 16, Chapter 11, Article 4, Part 3, even if they otherwise could show that the use of force was justified. But the Safe Carry Protection Act of 2014 amended OCGA § 16-3-24.2 to remove this limitation (at the same time OCGA § 16-11-138 was added). See Ga. L. 2014, p. 599, § 1-3.

[9] We express no opinion about the extent to which the limitations of OCGA § 16-3-21 (b) apply to a justification defense under OCGA § 16-11-138.

DECIDED FEBRUARY 28, 2020.

Murder. Bibb Superior Court. Before Judge Colvin.

*Hogue Hogue Fitzgerald & Griffin, Franklin J. Hogue*, for appellant.

*K. David Cooke, Jr., District Attorney, Jason M. Martin, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.